## Canon & Rooney *versus* Campbell.

1. In an action of debt on book account for goods sold, brought in the name of two partners for the use of another person, it was *held,* that one of the partners was a competent witness *for the defendant* to prove that it was agreed by himself and copartner, before the transfer of the claim in suit, that an account of the defendant against the witness for medical services should be credited against the account of the firm against the defendant on which the suit

[Canon & Rooney v. Campbell.]

was brought; and a release by defendant of his claim against the witness individually, or a deposit to answer costs, was not necessary.

2. Whether the said witness was indebted to the partnership and insolvent or not, was immaterial; but his indebtedness or insolvency was not to be conceded merely because the plaintiff, when objecting to his competency, offered to prove it; the admission of testimony on the part of the plaintiff *at that time*, would have been irregular.

3. It is not necessary to the competency of the witness, that he should testify *against* his interest; it is sufficient if he be not interested in the event of the suit. The interest of the party offered as a witness in this case, as respects the debt, was *in equilibrio*, as, in the event of a verdict for the defendant, he would be liable to his copartner or his assignee to the amount of the set-off; but in the event of such a verdict, he would be liable to his copartner, or his assignee, also, *for the costs of this suit*, and thus his testimony was *against* his interest.

ERROR to the Common Pleas of *Fayette county*.

An action of debt on *book account* for goods sold, was brought in the name of Daniel Canon and John A. Rooney, late partners under the name of John A. Rooney & Co., for the use of James F. Canon against A. Hamilton Campbell. Pleas, payment, and payment with leave and set-off. The book account was that of Rooney & Co. against Campbell the defendant. James F. Canon claimed as the transferee of Rooney & Co. The case was tried before GILMORE, J. Rooney & Co. were engaged in business in Union town, Fayette county. The book account having been given in evidence on part of plaintiff, the counsel of the defendant offered the deposition of Rooney, one of the legal plaintiffs, to prove that *he* was indebted to Campbell, and that Canon and himself agreed that Campbell's account against Rooney was to be credited against the account of the firm against Campbell, to the extent of the firm account, if Campbell's account exceeded it.

Objection was made on part of the plaintiff to the *answers* of Rooney to two interrogatories, to the effect above stated, and the admission of such testimony was assigned for error. The arrangement with the partners was *prior* to the transfer to James F. Canon of the claim in suit.

Objections were stated as follows:

1. Rooney is a party plaintiff on the record. 2. He is testifying against the interest of his copartner, and to pay his own individual debt with the partnership effects. 3. He is not testifying against his own interest. 4. He is testifying in his own favor. 5. Plaintiff, Canon, further objects on the grounds (which he offers to prove) that Rooney is already largely indebted to the firm of John A. Rooney & Co.—that he is insolvent, and that this claim of plaintiffs, with others, was assigned to James F. Canon to pay debts they owed him, and for which he was responsible as surety, before Rooney's deposition was taken:—also that the firm was dissolved before said deposition was taken, and D. Canon, by agreement, took the stock and debts to settle the partnership.

[Canon & Rooney *v.* Campbell.]

The objections were overruled, and exceptions taken on part of plaintiff.

The 2d interrogatory, and answers to the same, were as follows:

*Inter.* 2d—State whether there was any agreement between the plaintiff, John A. Rooney and Daniel Canon, trading, &c., and the defendant, with regard to the claim or account of the defendant against John A. Rooney; and if there was, please state fully what that agreement was, when made, and whether both members of the firm of John A. Rooney & Co. distinctly agreed to it?

*Answer*—"There was an understanding to that effect. The defendant got work from John A. Rooney & Co., to the amount of some nine or ten dollars. Canon made out his bill with some others; he presented defendant his bill, who told him that John A. Rooney owed him more than that; Canon came and told me, and the defendant also saw me that evening or next day, and said that if he had to pay the money for his bill he would have to quit taking work at the shop. I told Canon this, and he agreed that defendant's account against me might stand against the firm's account against him, and that defendant might continue to get shoes, and his bill against me would be an offset."

To the 3d interrogatory the answer was as follows:

"The defendant attended my family something like three years, as well as myself. He never got any pay except what he got out of the store of John A. Rooney & Co. I do not recollect how much his bill against me was, nor how much the firm's bill against him was. But if his bill against me is greater than the store bill against him, he gets credit for it as far as it goes, by agreement, and with the understanding that it should be so, between Daniel Canon and myself."

The defendant then gave in evidence his account against John A. Rooney.

Verdict was rendered for the *defendant*.

Error was assigned to the admission of the testimony, objected to as before stated.

*Veech*, for the plaintiff in error.—The Court below having admitted the evidence of Rooney, one of the plaintiffs, regardless of the offer contained in the 5th reason presented for its rejection, the several facts, there offered to be shown, must be taken here as true. The case then was to this effect:

A partnership claim, admittedly correct, having been duly assigned to a partnership creditor, is put in suit. The debtor alleges payment; to sustain which he shows himself to be a creditor of *one* of the plaintiffs. That plaintiff is insolvent, and largely indebted to the partnership. And, without any release by the defendant to him of accountability for the individual debt proposed

[Canon & Rooney *v.* Campbell.]

to be used to sustain the alleged payment, he offers that insolvent debtor partner, and co-plaintiff, as the witness, to defeat the rights of a partnership creditor, and in so doing to pay his own debt to the defendant. He contended that even if Rooney had *no interest* in the matter, he was not competent without the consent of all the parties to the record: 1 *Greenleaf's Ev.* sec. 354, and cases there cited; 6 *W. & Ser.* 138; 4 *Wend.* 453, referred to in Wolf *v.* Fink, 1 *Barr* 440; 12 *Peters* 149. A party is a witness only when he is called to testify *against* his own interest: 9 *Barr* 112, Mevey *v.* Mathews.

Rooney should have been released by the defendant from claim on him for his individual debt. Then his testimony would have been against his own interest, without any equipoise of interest on the payment, by his own evidence, of his debt to the defendant. But he was not so released.

*Howell*, with whom was *Oliphant*, for defendant in error.—The defendant was induced to get work done at the shop of Rooney & Co., under an express agreement *with both of the partners* to the effect that defendant's account against Rooney might stand against the account of the firm against defendant. It would be unjust to allow Daniel Canon, one of the partners, to avoid this agreement, and his assignee is in no better condition.

Rooney's interest was not *in equilibrio.* He was interested in favor of the plaintiff; for if the plaintiffs are defeated, he is responsible for *costs.* Rooney was a competent witness: 6 *W. & Ser.* 138; 3 *Ser. & R.* 407; 8 *W. & Ser.* 63; 4 *Barr* 134; 9 *Barr* 112.

As to the 5th objection : It was not material whether Rooney was or was not indebted to the firm, or whether or not he is insolvent, or whether the claim in suit was assigned to James F. Canon to pay debts which *the firm* owed to him. There was not, however, evidence of these facts, and the arrangement with the firm was made *before* the assignment to James F. Canon.

The opinion of the Court was delivered, Oct. 25, by

Bell, J.—Whatever may be the rule elsewhere, it seems to be definitively settled in Pennsylvania, that one of several plaintiffs or defendants may, with his consent, be examined as a witness for his antagonist, under the sole condition that he shall not be permitted to testify in furtherance of his own interests, at the expense of a co-party. This condition observed, he stands in the position of other witnesses, and subject to the rules by which they are governed. It is not true that the question of his admission or rejection depends upon considerations of policy, or that to qualify him, it must be shown he is about to swear *against* his interest. It is enough if this be *in equilibrio.* It may be that the tendency

[Canon & Rooney *v.* Campbell.]

of his testimony is injuriously to affect his fellow, but the only guard against this that can be legitimately claimed, is that he be not tempted to compromise the co-party by the prospect of bettering his own condition. This is all that is meant when it is said, as in Solms *v.* McCullough, 5 *Barr* 473, "there is no temptation to perjury where a man is willing to give testimony in favor of his adversary, and *against himself*," for it must necessarily follow, that, in testifying against his fellow, he is also testifying against himself. In Moderwell *v.* Reever, 8 *W. & Ser.* 63, it is remarked, speaking of a co-plaintiff, introduced as a witness for the defendant, "As a party plaintiff, Hamilton was competent to testify, against his fellows and himself. As to anything else he was competent to testify against all the world; and either way, the release, or the deposit to answer costs, was unnecessary." This practice is reasonably founded on the consideration that the declarations in *pais* of a party may be given in evidence to affect all connected with him; and it is truly said, in one of the cases, that it is better for the joint plaintiff or defendant his co-party should be examined under oath, since with the benefit of a cross-examination it is easier to prevent or detect attempted falsehood or fraud. Indeed, no other rule than that I have stated would admit of practical application. To say a party shall not testify, unless he swear wholly against himself, would be in effect to say, he shall not testify at all.

It is scarce worth while further to discuss this subject, since it has received the attention of this Court in several cases, which ascertain the rule so distinctly that one would have thought no room was left for founding a difficulty. In addition to those already referred to, I may mention Heckert *v.* Fegely, 6 *W. & Ser.* 138, Peters *v.* Horback, 4 *Barr* 134, and Mevey *v.* Matthews, 9 *Barr* 112. These, with Purviance *v.* Dryden, 3 *Ser. & R.* 407, show that it includes also partners in trade, and is, consequently, directly applicable here. It would be entirely sufficient for our purpose that our own adjudications so settle the law of evidence, for the guidance of our judicial tribunals, and a reference to adverse *dicta*, or even decisions elsewhere, might, without impropriety, be waived. Indeed, some of those most strongly relied on by the plaintiff in error, are shown in Mevey *v.* Matthews to be inapplicable. But conceding to them all that can be claimed, it comes down to a question of legal propriety; and I confess that, with all possible respect for those jurists who entertain a different opinion, I prefer our own rule, upon grounds of abstract reason. It is more in consonance with the inclination of modern courts, to open a wide door for the admission of information, where this can be done without manifest danger, rather than, by adhering to the ancient jealousy of juries, to exclude everything which by possibility might deceive them; an exclusion founded in a doubt of

[Canon & Rooney v. Campbell.]

their intelligence and independence, now dissipated by the increased education and refinement of all classes. As the condition annexed to the competency of this species of evidence, is the absence of all misleading interests—the only danger recognised by the law of evidence as disqualifying an otherwise credible witness— I am unable to perceive the temptation to commit perjury, upon which the objection seems to be based. As to the supposed impolicy of permitting a party in an action to testify, I readily recognise it in those cases of which Post v. Avery is the pioneer; but I cannot appreciate it as a sufficient reason, in instances like the present.

What, then, was Rooney's legal position when called to the book? He was the debtor of the defendant, and the effect of his evidence was to make him the debtor also of the plaintiff firm for the same amount. Thus far his interest was exactly balanced, for in the event of the defendant's success in sustaining his proffered set-off, the witness became immediately liable to his partner, or the creditor representing the partnership. But in that event he would be liable also for the costs of *this* action, to which extent he was additionally testifying *against* his interest.

It is, however, further objected that he was indebted to the partnership, and insolvent at the moment he was called to testify. There is no evidence of this, and it is a mistake to say the offer to prove it so far verifies it that it must be accepted as true. It is a settled rule in the conduct of a cause, that a party cannot arrest the due progress of his adversary's evidence for the purpose of introducing independent facts impeaching the proffered proof. But admitting the averment to be true, it in no degree affects the position of the witness. His interest remains as it was before, a balanced one; and the contest is reduced to the question, who shall suffer the threatened loss, the creditor of the partnership or the creditor of one of the members of the firm? Had the former a lien upon the partnership property, or were he invested with any peculiar equity giving him a preference over separate creditors, this question would properly be answered in his favor. But as the rule which directs partnership effects to be first applied in payment of partnership debts is founded in the equity of the partners, and not in any merit of their creditor, the former may waive the right by agreement that the creditor of the individual member of the firm shall be first satisfied; an arrangement of which the partnership creditors are in no condition to complain. Such an arrangement is averred here, and as the pecuniary condition of the partner witness will be unimproved by giving effect to it, he is competent to prove its existence. The plaintiff in error argues as though this involved a gross wrong to be inflicted on the joint creditors. The argument is, however, founded in misapprehension of the respective rights of the parties. The advantage usually

[Canon & Rooney *v.* Campbell.]

enjoyed by the creditors of a failing firm is incidental upon the rights of the partners themselves, who may, of course, waive it in favor of a separate creditor. By doing so, they invade no superior right resident in those having claims against the firm, nor inflict on them an injury of which they may legally complain. If a solvent partner has unwisely or unwarily entered into such an arrangement, he is not at liberty to visit the loss upon the creditor who has trusted to it.

Judgment affirmed.